IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **JONATHAN N. MILLAGE, JR.**, <br><br> Defendant. | Case No. 3:13-cr-234-SI <br><br> **OPINION AND ORDER GRANTING RENEWED MOTION FOR COMPASSIONATE RELEASE** |

**Michael H. Simon, District Judge.**

Defendant Jonathan N. Millage, Jr. has filed a Renewed Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 42. For the reasons that follow, the Court GRANTS Defendant's motion.

### LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE

**A. Modifying a Term of Imprisonment for Compassionate Release**

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010). Congress, however, has expressly authorized a district court to modify a defendant's sentence in three limited circumstances: (1) when granting a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A); (2) when expressly permitted by statute or by Rule 35 of the Federal

PAGE 1 – OPINION AND ORDER

Rules of Criminal Procedure; or (3) when a defendant has been sentenced based on a sentencing range that has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(1). The motion before the Court seeks compassionate release.

Before 2018, § 3582(c)(1)(A) required that a motion for compassionate release could be brought only by the Bureau of Prisons ("BOP"). The First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), amended § 3582 to authorize courts to grant a motion for compassionate release filed by a defendant. A defendant, however, may only bring a motion for compassionate release *after*: (1) petitioning the BOP to make such a motion on the defendant's behalf; *and* (2) either (a) the defendant has exhausted all administrative appeals after the BOP denied the defendant's petition or (b) thirty days has elapsed after the warden of the defendant's facility received the defendant's petition, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

Compassionate release under § 3582(c)(1)(A) authorizes a court to modify a defendant's term of imprisonment if the court finds that two conditions have been satisfied. The first is that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The second is that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The court also must *consider* the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. *Id*.

**B. Extraordinary and Compelling Reasons**

The Sentencing Commission policy statement for reducing a term of imprisonment under § 3582(c)(1)(A) is found in the United States Sentencing Guidelines Manual ("USSG") at § 1B1.13. That policy statement explains the phrase "extraordinary and compelling reasons." USSG § 1B1.13(1)(A) and cmt. 1. According to the policy statement, extraordinary and compelling reasons are: (1) the medical condition of the defendant (defined as whether the defendant is suffering from a terminal illness; or is suffering from a serious physical or medical

condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"); (2) the age of the defendant (defined as whether the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less); (3) family circumstances (defined as the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner); and (4) any other extraordinary and compelling reason determined by the Director of the BOP. USSG § 1B1.13 cmt. 1.

We are currently in a global health crisis caused by the 2019 novel Coronavirus ("COVID-19"), which has already taken the lives of more than 100,000 people just in the United States during the past several months. When a defendant has a chronic medical condition that may substantially elevate his risk of becoming seriously ill or dying from COVID-19, that condition may satisfy the standard of extraordinary and compelling reasons. Under these circumstances, a chronic medical condition (*i.e.*, one from which a defendant is not expected to recover) reasonably may be found to be both serious and capable of substantially diminishing the ability of the defendant to provide self-care within the environment of a correctional facility, even if that condition would not have constituted an extraordinary and compelling reason absent the heightened risk of COVID-19. *See generally* USSG § 1B1.13 and cmt. 1(A)(ii)(I).

Alternatively, USSG § 1B1.13, as currently written, does not constrain the Court's ability to find extraordinary and compelling reasons here. Because the Sentencing Commission's policy

statement was not amended after enactment of the First Step Act, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release" . . . "because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (citing *Brown v. United States*, 411 F. Supp. 3d 447, 499 (canvassing district court decisions)) (quotation marked omitted); *see also United States v. Redd*, 2020 WL 1248493, at *6. (E.D. Va. Mar. 16, 2020) ("[T]here does not currently exist, for the purposes of satisfying the ["FSA's] 'consistency' requirement, an 'applicable policy statement.'"); *United States v. Barber*, 2020 WL 2404679, at *3 (D. Or. May 12, 2020) ("The Court is persuaded by the reasoning of numerous other district courts and holds that it is not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.") (citations and quotation marks omitted).

As explained by one court, "a majority of federal district courts have found that the most natural reading of the amended § 3582(c) and [28 U.S.C.] § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." *United States v. Perez*, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020). Indeed, the Government previously conceded this point in *United States v. Young*, agreeing that "the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020). The court in *Young* followed many other district courts in recognizing that § 1B1.13's defined categories are not exclusive: "In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes

PAGE 4 – OPINION AND ORDER

extraordinary and compelling reasons for a sentence reduction." *Id*. The Court agrees with this alternative analysis as well.

## C. Safety of Other Persons and the Community

The policy statement further provides that, in addition to finding extraordinary and compelling reasons, a court also must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). The factors to be considered in deciding whether a defendant is a danger to the safety of any other person or to the community are: (1) the nature and circumstances of the offense (including whether the offense is a crime of violence, a violation of 18 U.S.C. § 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device); (2) the weight of the evidence; (3) the history and characteristics of the defendant (including, among other things, the defendant's character, physical and mental condition, and family ties and whether at the time of the offense or arrest the defendant was on probation, parole, or other release); and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

## D. Sentencing Factors Under § 3553(a)

Finally, as provided in both § 3582(c)(1)(A) and the policy statement, a court must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care, or other treatment in the most effective manner. 18 U.S.C. § 3553(a). The policy statement also recognizes that the sentencing court "is in a unique position to determine whether the circumstances warrant a reduction . . ., after

considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement[.]" USSG § 1B1.13 cmt. 4.

## LEGAL EFFECT OF PENDING APPEAL

On April 10, 2020, Defendant moved for an order of compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). In his motion, Defendant stated that on April 4, 2020, he filed an administrative request for compassionate release with the BOP by sending his petition to the warden of his facility. The Court denied Defendant's motion "without prejudice and with leave to renew if the BOP denies Defendant's request for compassionate release or if the BOP fails to decide Defendant's request within 30 days of the date that the BOP received Defendant's request, whichever comes first." ECF 35. Defendant requested reconsideration, which the Court denied. ECF 38. On April 15, 2020, Defendant filed a Notice of Appeal to the United States Court of Appeals for the Ninth Circuit. ECF 39. That appeal is pending and has been set for expedited consideration. ECF 41 (Ninth Circuit Case No. 20-30086).

On May 4, 2020, thirty days after sending his petition to the warden, Defendant filed his Renewed Motion to Reduce Sentence. ECF 42. In its response, the Government initially argued that the pending appeal divests this district court of jurisdiction over Defendant's renewed motion. ECF 44 at 3-5. The Government has since reconsidered this issue and "now believes that the Court does have jurisdiction to consider Millage's new filing, which should be treated as a new, timely motion for compassionate release." ECF 45 at 1. As the Government explains:

> Millage's pending appeal—asking whether the statute's exhaustion requirement is mandatory—does not deprive the Court of the jurisdiction to consider Millage's new motion because, unlike an appeal of his original judgment, the issue on appeal does not have the potential to impact Millage's conviction or sentence.

*Id*. at 2. Accordingly, the Court considers the merits of Defendant's pending "Renewed Motion to Reduce Sentence," which the Court treats as a new motion. To the extent, however, that this

PAGE 6 – OPINION AND ORDER

Court does not have jurisdiction at this time based on the pending appeal, this Opinion and Order should be treated as an "indicative ruling" under Rule 37(a)(3) of the Federal Rules of Criminal Procedure; *see also* Rule 12.1 of the Federal Rules of Appellate Procedure (remand after indicative ruling by district court).

## ANALYSIS

### A. Mr. Millage's Criminal History and Offense of Conviction

In March 2007, Mr. Millage was convicted in Multnomah County Circuit Court of unlawful use of a weapon and delivery of cocaine. He committed those offenses in 2006, when he was 19 years old. The state court sentenced Mr. Millage to three-year term of probation. In May 2009, Mr. Millage was convicted in Multnomah County Circuit Court of one count of delivery of cocaine within 1,000 feet of a school in July 2008 and one count of delivery of cocaine in October 2008. He was 20 years old in July 2008 and 21 years old in October 2008. The state court sentenced Mr. Millage to a 39-month term of imprisonment for the July 2008 offense and a five-year term of probation for the October 2008 offense. When he committed these two offenses in 2008, Mr. Millage was on probation from his 2007 conviction. He was released from prison in November 2011 and placed on state post-prison supervision through November 2014.

On April 11, 2013, when still under post-prison supervision, Mr. Millage was arrested after assaulting his then-girlfriend in a parking lot by repeatedly punching her and throwing her against a cinder block wall. Upon arresting Mr. Millage, law enforcement found a semi-automatic handgun in his car, which Mr. Millage admitted belonged to him. At the time of this offense, Mr. Millage was 25 years old and had been drinking. Mr. Millage was transferred to federal custody on August 14, 2013.

Pursuant to a plea agreement, Mr. Millage pleaded guilty to one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The parties jointly recommended a sentence of 108 months in prison, followed by a three-year term of supervised release. On April 1, 2014, the late U.S. District Judge Garr M. King sentenced Mr. Millage to the jointly recommended sentence. Mr. Millage's scheduled release date is January 17, 2021. Mr. Millage has already served more than 90 percent of his 108-month prison sentence.

**B.  Mr. Millage's Conduct while in Federal Prison**

Mr. Millage currently is incarcerated at the Federal Correction Institution ("FCI") Victorville Medium, in Victorville, California. During his time in federal prison, Mr. Millage has successfully completed the BOP's Residential Drug Abuse Program ("RDAP"), which is an intensive nine-month, 500-hour substance abuse rehabilitation program administered by the BOP and offered only to federal prisoners who qualify for the program and voluntarily elect to enroll. Mr. Millage also successfully completed the BOP's RDAP aftercare program and the BOP's parenting classes. He has had no disciplinary infractions during the past five years. The Bureau of Prisons has scheduled Mr. Millage to serve the remainder of his sentence at the Northwest Regional Reentry Center beginning next month, on July 21, 2020.

**C.  Mr. Millage's Medical Condition**

When Mr. Millage was 17 years old, he was diagnosed with active systemic lupus erythematosus ("Lupus"), a chronic autoimmune disease. In this autoimmune disease, the body's immune system becomes hyperactive and attacks healthy tissue. The symptoms of this disease are generally controllable with medication and proper diet. Mr. Millage also has been diagnosed with high blood pressure, for which he takes medication.

The CDC and other medical authorities have stated that COVID-19 is especially dangerous for older people and for people with severe chronic medical conditions, including

compromised immune systems. *See* Centers for Disease Control and Prevention, Coronavirus (COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/index.html (last visited June 2, 2020). Individuals diagnosed with Lupus have compromised immune systems. *See* https://www.hopkinslupus.org/lupus-info/lupus-affects-body/lupus-immune-system/ (last visited June 2, 2020).

**D. Government's Response**

The Government acknowledges that Mr. Millage has Lupus and that this type of chronic medical condition may elevate his risk of becoming seriously ill from COVID-19. As such, the Government concedes, Mr. Millage's medical condition in the current environment may satisfy the standard of extraordinary and compelling reasons. ECF 44 at 7. The Government adds:

> [T]he Court should consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at the institution. To date, there are no known cases of COVID-19 at FCI - Victorville Medium. There is no reason to conclude that the potential risk of catching COVID-19 is sufficiently compelling to release Millage immediately given that he will transition to a halfway house in two months.

*Id*. at 8. As of June 1, 2020, the BOP has reported no "confirmed" cases of COVID-19 at FCI Victorville Medium. *See* https://www.bop.gov/coronavirus/ (last visited June 2, 2020).

The Government is correct that there are no "known cases" of COVID-19 at the FCI Victorville Medium facility. The Government, however, did not disclose whether or to what extent that facility is testing symptomatic or asymptomatic inmates, both or neither. In *United States v. Pabon*, 2020 WL 2112265, at *5 (E.D. Pa. May 4, 2020), the court cited Johns Hopkins Bloomberg School of Public Health Professor Leonard Rubenstein to explain the link between testing and limiting the spread of COVID-19: "Unless you do universal testing in all environments, the risk of spread is enormous. If you are waiting for symptoms to emerge before

PAGE 9 – OPINION AND ORDER

you do the testing, you are getting a false picture of what is going on . . . It's too late." *Id.* (citing Kevin Johnson, Mass Virus Testing in State Prisons Reveals Hidden Asymptomatic Infections; Feds Join Effort, USA TODAY (Apr. 25, 2020, updated Apr. 27, 2020), https://www.usatoday.com/story/news/politics/2020/04/25/coronavirus-testing-prisons-revealshidden-asymptomatic-infections/3003307001/) (last visited June 2, 2020); *see also Arias v. Decker*, 2020 WL 2306565, at *8 (S.D.N.Y. May 8, 2020) ("[W]hen it comes to vulnerable detainees like Petitioners, monitoring them for signs of infection is too little, too late."). The Court is satisfied that Mr. Millage has sufficiently shown extraordinary and compelling reasons for compassionate release.

The Government also argues that Mr. Millage has failed to show that he is no longer a danger to the safety of any other person or to the community. The Government focuses on Mr. Millage's history of drug distribution, unlawful use of a weapon, and the domestic violence incident that resulted in his federal conviction. The Government argues that Mr. Millage's "best chance of a successful transition to the community (and the one that involves the least risk) is if he is released to a halfway house consistent with BOP's plan as he completes his sentence." *Id.* at 9.

It has now been more than seven years since Mr. Millage's offense of conviction and the related incident of domestic violence. He is now 32 years old and has served more than 90 percent of his federal prison sentence. Mr. Millage has used the intervening years in custody to address the circumstances that led to his offense conduct. As previously described, he completed the BOP's six-month Residential Drug Abuse Program, including aftercare classes. He also has taken parenting classes. Further, as discussed in the next section, the conditions of supervision should be enough to minimize risk and protect other persons and the community generally.

**E. Mr. Millage's Release Plan and Risk to the Community**

In his motion, Mr. Millage requests a sentence of time served with supervised release to include home confinement for eight months, or the duration of his sentence of incarceration. He proposes to live with his longtime girlfriend Kelsey Jorgensen (who is not the victim of his 2013 assault) and her minor children, in her three-bedroom home in Boring, Oregon. The U.S. Probation Office has spoken with Ms. Jorgensen and has "virtually" inspected her home. The Probation Office has concluded that the "home plan is deemed acceptable." ECF 34 at 4. The Probation Office also has noted that, if released on supervision, Mr. Millage will "be expected to abstain from the use and possession of alcoholic beverages; not visit any establishment where alcohol is the primary item for sale; not associate with any gang members; observe reentry court; submit a DNA sample; and participate in and successfully complete a domestic violence counseling program." *Id* at 5. The Probation Office further notes that Mr. Millage is "subject to unannounced home inspections and a search condition" and that Ms. Jorgensen "was advised of these conditions and is amenable to them." *Id*. Most significantly, the Probation Office states:

> At this time, under the current circumstances, the release plan is deemed acceptable and the U.S. Probation Office in the District of Oregon is willing to accept supervision of the inmate's case upon release from the Bureau of Prisons.

*Id.* This release plan should be sufficient to protect the safety of any other person and the community. It is also consistent with the sentencing factors under § 3553(a).

## CONCLUSION

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court finds that extraordinary and compelling reasons warrant a reduction of Defendant's sentence, that Defendant does not pose a danger to any other person or the community, that the § 3553(a) factors support a reduction, and

PAGE 11 – OPINION AND ORDER

that the reduction is consistent with currently applicable U.S. Sentencing Commission policy statements. Accordingly, it is **ORDERED**:

1. The Court GRANTS Defendant's Renewed Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF 42).

2. The Court will issue an Amended Judgment.

3. Defendant's sentence of imprisonment is reduced to time served, effective Monday, June 8, 2020, and the BOP shall release Defendant for travel to Portland, Oregon.

4. Defendant shall report immediately to his approved address at the home of Kelsey Jorgensen in Boring, Oregon upon his arrival in Portland. He shall report in person (or by telephone or other means as directed), to the United States Probation Office within 72 hours (three calendar days of his release).

5. Defendant is ordered to take all reasonably available precautions during his travel to Portland, including the use of a mask. Upon arrival at his approved address, Defendant shall be required to adhere to a 14-day quarantine period by the United States Probation Office.

6. All previously imposed conditions remain in place, with the following additional conditions of release:

    a. Defendant shall be subject to a term of home confinement through January 17, 2021, which is the scheduled remainder of his original term of incarceration as determined by the BOP;

    b. Defendant shall be subject to a curfew at the discretion of his supervising probation officer; and

    c. Defendant shall be subject to random telephone check-ins at the discretion of the U.S. Probation Office and any further location monitoring at the discretion of his

supervising probation officer. If the Probation Office requires the installation of a hardwired telephone landline, it shall be promptly installed at the expense of Mr. Millage or Ms. Jorgensen.

**IT IS SO ORDERED.**

DATED this 2nd day of June, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge